1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9
KYONG HWA WOLTER, et al.,
10
                                        NO. CIV. S-07-241 LKK/CMK
11            Plaintiffs,

12       v.
                                        O R D E R
13  PETER D. KEISLER, Acting
    Attorney General, et al.,
14

15            Defendants.

16  _____/

17        Plaintiff Gary Wolter is a U.S. citizen who filed an immigrant

18  visa petition on behalf of his plaintiff wife, Kyong Hwa Wolter.

19  Defendant, U.S. Citizenship and Immigration Services, denied the

20  petition on the grounds that Mrs. Wolter previously entered into

21  a fraudulent marriage for the purpose of evading immigration laws.

22  Plaintiffs   challenge   that   denial   under   the   Administrative

23  Procedures  Act  and  argue  that  defendants  lacked  substantial

24  evidence to support their decision.  Pending before the court are

25  cross-motions for summary judgment.  The court resolves the matters

26  on the parties' papers and after oral argument.  For the reasons

1

1 explained below, plaintiffs' motion is granted and defendants'

2 motion is denied.

3                            **I. Facts[1]**

4        Plaintiff Kyong Hwa Wolter is a South Korean citizen who has

5 brought suit against defendants U.S. Citizenship and Immigration

6 Services (CIS), Acting Attorney General Peter Keisler, Secretary

7 of Homeland Security Michael Chertoff, and Officer in Charge of the

8 CIS at the American Embassy in Seoul, South Korea Jose Olivares.

9 Mrs. Wolter initially entered the U.S. on November 17, 1983.

10 Administrative Record (AR) 109-10; 121-23.  She married a man named

11 Johnny Ray Rowe in Texas on March 12, 1984, and later divorced him

12 on February 11, 1985.  AR 213; 15.  The validity of that marriage

13 is the central subject of dispute between the parties.

14        On February 21, 1986, Mrs. Wolter, then 21 years old,

15 attempted to enter the U.S. at Las Cruces, New Mexico.  AR 42.  She

16 was taken into custody and questioned by a Border Patrol agent.

17 The agent then prepared a written sworn statement for Mrs. Wolter

18 to sign.  AR 34.  The statement indicated that the interview was

19 conducted in English and that no interpreter was used.  AR 34-35.

20 Although she was warned that her admissions could be used against

21 her in future proceedings, the warning was also in English.  AR 34.

22 According to the statement, Mrs. Wolter admitted that she offered

23 Mr. Rowe $4,000 to marry her and obtain a green card on her behalf.

24 AR 35.  She allegedly paid him either $1,500 or $2,000 and was

25

26        [1] The facts are basically undisputed.

                                    2

1 planning on paying him the rest after he obtained the green card,

2 but he never did so.  Id.

3     Mrs. Wolter was detained and placed in deportation proceedings

4 for having stayed in the U.S. without authority.  AR 143.  Through

5 counsel, she requested release on bond, which was granted, and

6 indicated that she would seek to adjust her status on the basis

7 that she was engaged to marry a man named Jerry Hubble.  AR 50-52.

8 The government opposed Mrs. Wolter's attempt to adjust status,

9 citing her sworn statement admitting marriage fraud.  AR 142.

10 Although Mrs. Wolter married Mr. Hubble in Nevada on April 18,

11 1986, AR 216, she failed to submit an application for relief from

12 deportation or appear at the hearing.  On September 2, 1986, the

13 immigration judge issued an order of deportation in absentia.  AR

14 195-96.

15     Mrs. Wolter divorced Mr. Hubble on May 2, 1988.  AR 214.  She

16 then married plaintiff Gary John Wolter, a U.S. citizen, in South

17 Korea on March 26, 1993.  AR 11.  Mr. Wolter has filed a series of

18 three (ultimately unsuccessful) I-130 immediate relative alien

19 petitions on behalf of Mrs. Wolter.[2]  The first filed on October

20 15, 1993 was granted but revoked when CIS discovered that the

21 Wolters failed to disclose that Mrs. Wolter had previously been

22 married and ordered deported.

23     The second petition filed on February 4, 1998 properly

24

---

25     [2] A U.S. citizen may petition for an immigrant visa for an

26 alien spouse by filing an I-130.  8 U.S.C. §§ 1151(b)(2)(A)(i),
1154(a)(1)(A)(i).

3

1   disclosed the prior marriages and deportation.  Nevertheless, CIS

2   issued a notice of intent to deny the petition on the basis that

3   Mrs. Wolter previously entered into a fraudulent marriage and

4   conspired to do so for purposes of evading immigration laws.[3]

5   Plaintiffs responded that Mrs. Wolter's English skills were very

6   poor at the time the sworn statement was taken and that she had

7   been merely told to sign off on the statement.  AR 23.

8        She also submitted two supporting letters.  One was from a

9   friend who had known Mrs. Wolter since 1980 and stated that Mrs.

10  Wolter "didn't have any command or understanding of English . . .

11  at the time of her signing the [sworn statement]."  AR 27.  The

12  second was from a friend who also knew Mrs. Wolter from South Korea

13  and maintains that when she met with Mrs. Wolter in the U.S., Mrs.

14  Wolter still did not know English; indeed, the letter states that

15  Mrs. Wolter did not take English language classes until after the

16  incident in New Mexico when she was detained.  AR 29.  This second

17  friend also maintains the Border Patrol agents told Mrs. Wolter

18  that if she signed at the places they pointed to on the statement,

19  she could leave.[4]  Id.

20  ─────────────────────────────

21       [3] Section 204(c) of the Immigration and Nationality Act
    provides that "no petition shall be approved if (1) the alien
22  [sought] an immediate relative or preference status as the spouse
    of a citizen of the United States . . . by reason of a marriage
23  determined by the Attorney General to have been entered into for
    purpose of evading the immigrations laws or (2) the Attorney
24  General has determined that the alien has attempted or conspired
    to enter into a marriage for the purpose of evading the
25  immigrations laws."  8 U.S.C. § 1154(c).

26       [4] Of course, this statement is hearsay.  In the opposition to
    defendants' motion for summary judgment, Mrs. Wolter submitted an

4

1  The second petition was denied on April 18, 2000.  Finally,
2  on August 17, 2004, plaintiffs filed their third petition.  AR 183-
3  84.  On September 19, 2004, CIS issued a notice of intent to deny
4  the I-130 for the same reasons as the second petition, which became
5  final on November 5, 2004.  AR 180-81.  Mr. Wolter appealed the
6  denial to the Board of Immigration Appeals, who denied the appeal
7  on October 2, 2006.  Plaintiffs subsequently filed this action,
8  which seeks declaratory relief.

9  **II. Standard**

10  Summary judgment is appropriate when it is demonstrated that
11  there exists no genuine issue as to any material fact, and that the
12  moving party is entitled to judgment as a matter of law.  Fed. R.
13  Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144,
14  157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir.
15  1995).

16  Under summary judgment practice, the moving party

17  always bears the initial responsibility of informing the
district court of the basis for its motion, and
18  identifying those portions of "the pleadings,
depositions, answers to interrogatories, and admissions
19  on file, together with the affidavits, if any," which it
believes demonstrate the absence of a genuine issue of
20  material fact.

21  _____

22  affidavit indicating the same facts.  Aff. of Kyong Hwa Wolter at
1 ("[The Border Patrol agent] said that if I would just initial
23  where he pointed, I could go.  I couldn't understand what he was
saying, so he showed me what initials were by writing my initials
24  and telling me to do the same.  I was coerced into signing my name,
and he never showed me what he was writing on paper.").
25  Nevertheless, in adjudicating the pending motions, the court has
not relied upon the affidavit, which was not part of the
26  administrative record before the agency and therefore is not
properly before the court now.

5

1   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the

2   nonmoving party will bear the burden of proof at trial on a

3   dispositive issue, a summary judgment motion may properly be made

4   in reliance solely on the 'pleadings, depositions, answers to

5   interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary

6   judgment should be entered, after adequate time for discovery and

7   upon motion, against a party who fails to make a showing sufficient

8   to establish the existence of an element essential to that party's

9   case, and on which that party will bear the burden of proof at

10  trial.  <u>See id.</u> at 322.  "[A] complete failure of proof concerning

11  an essential element of the nonmoving party's case necessarily

12  renders all other facts immaterial."  <u>Id.</u>  In such a circumstance,

13  summary judgment should be granted, "so long as whatever is before

14  the district court demonstrates that the standard for entry of

15  summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u>

16  at 323.

17      If the moving party meets its initial responsibility, the

18  burden then shifts to the opposing party to establish that a

19  genuine issue as to any material fact actually does exist.

20  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

21  586 (1986); <u>see also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>,

22  391 U.S. 253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853.

23      In attempting to establish the existence of this factual

24  dispute, the opposing party may not rely upon the denials of its

25  pleadings, but is required to tender evidence of specific facts in

26  the form of affidavits, and/or admissible discovery material, in

6

support of its contention that the dispute exists.  Fed. R. Civ.
P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>see also</u> <u>First Nat'l</u>
<u>Bank</u>, 391 U.S. at 289; <u>Rand v. Rowland</u>, 154 F.3d 952, 954 (9th Cir.
1998).   The opposing party must demonstrate that the fact in
contention is material, i.e., a fact that might affect the outcome
of the suit under the governing law, <u>Anderson v. Liberty Lobby,</u>
<u>Inc.</u>, 477 U.S. 242, 248 (1986); <u>Owens v. Local No. 169, Ass'n of</u>
<u>Western Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1992)
(quoting <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>,
809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is
genuine, i.e., the evidence is such that a reasonable jury could
return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-
49; <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200
F.3d 1223, 1228 (9th Cir. 1999).

     In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue of
fact conclusively in its favor.  It is sufficient that "the claimed
factual dispute be shown to require a jury or judge to resolve the
parties' differing versions of the truth at trial."  <u>First Nat'l</u>
<u>Bank</u>, 391 U.S. at 290; <u>see also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.
Thus, the "purpose of summary judgment is to 'pierce the pleadings
and to assess the proof in order to see whether there is a genuine
need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R.
Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>see</u>
<u>also</u> <u>Int'l Union of Bricklayers & Allied Craftsman Local Union No.</u>
<u>20 v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

1    In resolving the summary judgment motion, the court examines

2  the pleadings, depositions, answers to interrogatories, and

3  admissions on file, together with the affidavits, if any.   Rule

4  56(c); see also In re Citric Acid Litig., 191 F.3d 1090, 1093 (9th

5  Cir. 1999).  The evidence of the opposing party is to be believed,

6  see Anderson, 477 U.S. at 255, and all reasonable inferences that

7  may be drawn from the facts placed before the court must be drawn

8  in favor of the opposing party, see Matsushita, 475 U.S. at 587

9  (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)

10  (per curiam)); see also Headwaters Forest Def. v. County of

11  Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).   Nevertheless,

12  inferences are not drawn out of the air, and it is the opposing

13  party's obligation to produce a factual predicate from which the

14  inference may be drawn.  See Richards v. Nielsen Freight Lines, 602

15  F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

16  (9th Cir. 1987).

17    Finally, to demonstrate a genuine issue, the opposing party

18  "must do more than simply show that there is some metaphysical

19  doubt as to the material facts. . . . Where the record taken as a

20  whole could not lead a rational trier of fact to find for the

21  nonmoving party, there is no 'genuine issue for trial.'"

22  Matsushita, 475 U.S. at 587 (citation omitted).

23                          **III. Analysis**

24    Plaintiffs challenge the denial of the I-130 petition for

25  alien relative pursuant to the Administrative Procedures Act

26  (APA).  The APA permits courts to set aside agency action that

8

1  is "arbitrary, capricious, an abuse of discretion, or otherwise
2  not in accordance with the law."  5 U.S.C. § 706.  The
3  underlying laws at issue here include the statute providing that
4  spouses of U.S. citizens may be issued immigrant visas, 8 U.S.C.
5  § 1151, and the statute directing that visa petitions be denied
6  for fraudulent marriages, 8 U.S.C. § 1154(c).

7        Applying this standard to the facts of this case,
8  defendants must have had substantial evidence that Mrs. Wolter
9  previously entered into a fraudulent marriage.  See Nakamoto v.
10  Ashcroft, 363 F.3d 874, 881 (9th Cir. 2004) (holding that
11  whether marriage fraud has been committed is "an intrinsically
12  fact-specific question, which we review under the substantial
13  evidence standard"); Tongatapu Woodcraft Hawaii, Ltd. v.
14  Feldman, 736 F.2d 1305, 1309 (9th Cir. 1984) (the "Service
15  retains at least the burden of producing substantial evidence
16  supporting its determination"); see also 8 C.F.R. §
17  204.2(a)(1)(ii) (directing denial of visa petitions upon
18  "substantial and probative evidence" of marriage fraud).  The
19  agency ordinarily "should not give conclusive effect to
20  determinations made in a prior proceeding" but may, if extant,
21  rely upon "clear, unequivocal, and convincing evidence that
22  [the] beneficiary [of the petition] became a party to a
23  fraudulent marriage."  Matter of Tawfik, 20 I. & N. Dec. 166
24  (BIA 1990).

25        The court may not substitute its judgment for that of the
26  agency, even if it might arrive at a different conclusion.

1   <u>Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>,

2   463 U.S. 29, 43 (1983).  Rather, when reviewing for sustantial

3   evidence, the duty of the court is to determine whether there is

4   "such relevant evidence that a reasonable mind might accept as

5   adequate to support a conclusion."  <u>Consolidated Edison v. NLRB</u>,

6   305 U.S. 197, 229 (1938).

7                                        **A.**

8      Defendants raise essentially two arguments: one procedural

9   and one substantive.  Turning first to the procedural argument,

10   defendants argue that plaintiffs' present action amounts to an

11   impermissible collateral attack on the deportation proceedings.

12   <u>See</u> <u>Ramirez-Juarez v. I.N.S.</u>, 633 F.2d 174, 175-76 (1980) ("an

13   alien cannot collaterally attack an earlier exclusion or

14   deportation at a subsequent deportation hearing, in the absence

15   of a gross miscarriage of justice at the prior proceedings");

16   <u>Tejeda-Mata v. I.N.S.</u>, 626 F.2d 721, 726 (9th Cir. 1980) ("There

17   is nothing in the record . . . suggesting that petitioner, who

18   has at all times been represented by counsel, raised the

19   question . . . before either the Immigration Judge or the

20   Board.").

21      The argument is without merit.  Plaintiffs are not

22   challenging -- either directly or indirectly -- the 1986 order

23   of deportation.  Based on the record in existence at the time,

24   and Mrs. Wolter's failure to appear at the deportation hearing,

25   the immigration judge had ample grounds to issue the deportation

26   order, and plaintiffs do not argue otherwise.  Instead, what

1  plaintiffs challenge is the factual predicate that underlies

2  both the deportation proceedings and her I-130 petition: the

3  sworn statement purporting to admit marriage fraud.  Although

4  plaintiffs did not challenge the admissibility or reliability of

5  that statement in the deportation proceedings, they did

6  challenge the statement in the I-130 proceedings, as reflected

7  in the record.  AR 23-30 (plaintiffs' response to notice of

8  intent to deny petition).  Accordingly, any suggestion that

9  plaintiffs failed to raise this argument earlier before the

10  agency is incorrect.

11      Defendants' reliance on Eide-Kahayon v. I.N.S., 86 F.3d

12  147 (9th Cir. 1996), is also misplaced.  There, the petitioner

13  attempted to dispute the allegedly false testimony that she

14  provided at an earlier proceeding.  The Ninth Circuit held that

15  she was "collaterally estopped from raising this issue." Id. at

16  149.  Crucially, however, the court noted that it had previously

17  ruled on this issue in a separate appeal, which found that

18  "[t]he BIA's decision [involving her false testimony] [was]

19  supported by substantial evidence." Eide-Kahayon v. I.N.S., 5

20  F.3d 535 (9th Cir. 1993).  Here, as explained below, CIS' denial

21  of the I-130 was not supported by substantial evidence.

22  Moreover, the agency should generally make fresh determinations

23  based on the evidence before it, rather than give conclusive

24  effect to determinations made in prior proceedings.  Matter of

25  Tawfik, 20 I. & N. Dec. at 168.

26  ////

**B.**

Defendants' substantive argument fares no better.  The only evidence to support the agency's denial of the petition is Mrs. Wolter's sworn statement.[5]  As Mrs. Wolter explained to the agency in a letter, however, her English was very poor at the time.  AR 23.  This was corroborated by two other letters from people who knew Mrs. Wolter in 1986.  AR 27-30.  Mrs. Wolter further claimed that the statement was inaccurate, and therefore disavowed its contents.[6]  AR 23 ("the 'admissions' . . . were

_____

[5] That the I-213 Record of Deportable Alien form prepared by the border patrol agent mirrors the facts set forth in the sworn statement is hardly surprising.  AR 42.  The I-213 is essentially a recorded recollection of the agent's conversation with the alien.  Espinoza v. I.N.S., 45 F.3d 308, 309 n.1 (9th Cir. 1995).  If the agent misunderstood Mrs. Wolter, that misunderstanding would be evident both in the statement prepared for Mrs. Wolter and in the agent's own summary of the conversation; to construe these as two separate pieces of evidence would be double-counting.
    Moreover, "[a] petitioner who produced probative evidence that contradicts anything material on the I-213 would cast doubt upon its reliability.  In that case, the factfinder would be hard put to find the I-213 clear and convincing evidence of alien status without the government's producing evidence to show the reliability of the information on the I-213."  Id. at 311.  Here, plaintiffs have done precisely that.  AR 23-30.
    Aside from the I-213, defendants also argue that the agency may rely on the inferences of marriage fraud that may be drawn from a sequence of events.  In Roe v. I.N.S., 771 F.2d 1328 (9th Cir. 1985), for example, the court found substantial evidence of marriage fraud where the petitioner had gotten divorced and remarried on the same day.  Although Mrs. Wolter may have had a series of unsuccessful marriages -- which is hardly unusual even among American citizens -- the facts of this case do not begin to approach those of Roe.

[6] The agency's statement that Mrs. Wolter "[did] not state that the contents of the sworn statement were untrue," AR 132, relies on an overly-technical reading of her letter.  It is obvious that even at the time she wrote the letter in 1998, her English skills were still only rudimentary; accordingly, she simply asked that the agency "[r]emove the sworn statement."  AR 25.  Even if

1  neither informed nor accurate"); AR 25 (requesting that the

2  agency "remove the sworn statement").

3      Even under the deferential standard of review this court is

4  bound to apply in reviewing agency actions, this is not

5  substantial evidence.  The facts of <u>Guzman-Guzman v. I.N.S.</u>, 559

6  F.2d 1149 (9th Cir. 1977), are instructive.  There, the

7  petitioner was a permanent-resident alien charged with being

8  deportable for assisting aliens to enter the U.S. illegally.

9  <u>Id.</u> at 1150.  The petitioner had been detained by a California

10 Highway Patrol officer while driving a car with four alien

11 passengers.  <u>Id.</u>  In due course, all four aliens signed

12 statements written in English indicating that they each paid

13 petitioner $50 to help them enter the U.S.  <u>Id.</u>  None of the

14 aliens spoke or read English.  <u>Id.</u>

15     At trial, the aliens testified that the statements

16 reflected a misunderstanding about payment and that any payment

17 to the petitioner was intended to be voluntary on their part.

18 <u>Id.</u>  Nevertheless, after viewing the demeanor of the aliens, the

19 immigration judge found that petitioner had knowingly assisted

20 the aliens in illegally entering the U.S.  <u>Id.</u>

21     The Ninth Circuit reversed.  It held that the statements,

22 "when contradicted by their authors who neither spoke nor read

23 the language in which they were written," could not "clear the

24

25 that request was not enough to show that Mrs. Wolter disputed the
   statement's contents (and it was), the letter from her attorney
26 also indicates that the statement was inaccurate.  AR 23.

1  [] demanding barrier of 'reasonable, substantial, and

2  probative'" evidence.[7]  *Id.*  Similarly, here, Mrs. Wolter could

3  not speak or read English at the time she signed the sworn

4  statement and she has disavowed its contents.  AR 23-30.

5  Indeed, her poor command over the English language was

6  corroborated by Mrs. Wolter's acquaintances.  *Id.*  Moreover,

7  whereas the immigration judge in Guzman-Guzman at least made a

8  finding based on the demeanor of the witnesses, here, the

9  defendants did not even have the benefit of judging Mrs.

10  Wolter's credibility.  Accordingly, like the sworn statements in

11  Guzman-Guzman, Mrs. Wolter's sworn statement also fails to clear

12  the substantial evidence standard.

13      Although not controlling here, it is also telling that

14  translation for non-English speakers is key to fundamental

15  fairness in the deportation context.  See Tejeda-Mata v. I.N.S.,

16  626 F.2d 721, 726 (9th Cir. 1990) ("this court and others have

17  repeatedly recognized the importance of an interpreter to the

18  fundamental fairness of [] a [deportation] hearing if the alien

19  cannot speak English fluently"); Perez-Lastor v. I.N.S., 208

20  F.3d 773, 778 (9th Cir. 2000); Matter of Tomas, 19 I. & N. Dec.

21  464, 465 (BIA 1987) ("The presence of a competent interpreter is

22

23      [7] Presumably, then, the presumption that "public officials
perform their duties without motive or interest," Keith v. Volpe,

24  858 F.2d 467, 481 (9th Cir. 1988), was also inadequate to shield
the evidence from attacks on its reliability.  In any event, one

25  need not impute improper motives to public officials when it is
just as likely (if not more likely) that a public official simply

26  misunderstood the non-English speaker.

1 important to the fundamental fairness of a hearing, if the alien

2 cannot speak English fluently.").

3     In sum, the court concludes that reliance on the sworn

4 statement -- which was prepared by a third party and then signed

5 by an alien who neither spoke nor read English and who

6 subsequently retracted its contents -- does not constitute the

7 substantial and probative evidence needed to uphold the agency's

8 finding of marriage fraud.

9                        **IV.  Conclusion**

10     For the reasons explained above, plaintiffs' motion for

11 summary judgment (Doc. No. 18) is GRANTED and defendants' motion

12 for summary judgment is DENIED (Doc. No. 17).  The clerks'

13 office is directed to enter judgment for plaintiffs and close

14 the case.

15     IT IS SO ORDERED.

16     DATED:  November 15, 2007.

19 _____
LAWRENCE K. KARLTON
SENIOR JUDGE
20 UNITED STATES DISTRICT COURT

15